**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

**BOSCUS CANADA INC.,**

**Plaintiff,**

**v.**　　　　　　　　　**Civil Action No. 4:22-cv-70**

**UNITED STATES,**

**Defendant.**

**Complaint and Application for Temporary Restraining Order,
Temporary Injunction and Permanent Injunction**

Plaintiff, Boscus Canada, Inc., ("Boscus"), by and through its attorneys, alleges herein as follows:

**PARTIES**

1.　　　Plaintiff, Boscus, is a Canadian business organization and the importer of record of the subject merchandise.

2.　　　Defendant is the federal government of the United States of America, including U.S. Customs and Border Protection ("CBP") and the Animal Plant Health Inspection Service of the United States Department of Agriculture ("APHIS").  Service may be made on the United States by serving:

- Acting U.S. Attorney Jennifer Lowery, via email at USATXS.CivilNotice@usdoj.gov and via certified mail to Civil Process Clerk, United States Attorney's Office, 1000 Louisiana St., Suite 2300, Houston, Texas 77002; and

- U.S. Attorney General Merrick B. Garland, via certified mail to U.S. Department of Justice, 950 Pennsylvania Avenue, NW, Washington, DC 20530-0001.

Actual notice of this Complaint and related summons is also being forwarded to:

- CBP, via email at cbpserviceintake@cbp.dhs.gov and via certified mail to the Office of Chief Counsel, U.S. Customs and Border Protection, 1300 Pennsylvania Avenue, Suite 4.4-B, Washington, D.C. 20229; and

- APHIS, via certified mail to Office of the General Counsel, United States Department of Agriculture Room 107W, Whitten Building, 1400 Independence Ave., SW, Washington, D.C. 20250-1400.

### JURISDICTION AND VENUE

3.      This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

### FACTUAL and LEGAL BACKGROUND

4.      Plaintiff is the importer of record of the subject merchandise.

5.      The subject merchandise consists of 1,991,482 cubic meters of lumber (the "Lumber") and is of German origin. The Lumber was produced by Ilim Timber Bavaria GmbH ("Ilim") located in Landsberg am Lech, Germany.

6.      The Lumber arrived in the Port of Houston, Texas on board the vessel Szare Szeregi on November 6, 2021. The merchandise was on two bills of lading GSSW21BGN3047A and GSSW21BGN3049A. Copies of the bills of lading are attached as Exhibit 1.

7.      Boscus issued purchase orders P1003814 and P1003821 to Ilim for the purchase of the Lumber. When the Lumber was shipped, Ilim issued commercial invoice number 60230273 for the Lumber on bill of lading GSSW21BGN3047A and commercial invoice number 60230266 for the Lumber on bill of lading GSSW21BGN3049A. Copies of the purchase orders and commercial invoices are attached as Exhibit 2.

8.      The purchase orders specified that the Lumber be KD (kiln dried) to a moisture content of 18% or less. The commercial invoices describe the Lumber as kiln-dried lumber in various dimensions and with the general item descriptions of Spruce-Stud-Premium-KD18, FI-

2

SW4-KD18, and Spruce-No.2-Premium-KD18. The KD18 portion of the item description indicates that the Lumber was kiln dried to a moisture content of less than 18%. *See* Exhibit 2.

9.      The Lumber is classified under tariff item 4407.10.0120, HTSUS.

10.      On November 22, 2021, CBP Officer Karla Y. Munoz in the Port of Houston, Texas, issued Emergency Action Notices ("EANs") 353583 and 353584 stating that "[t]he commodity listed does not meet the treatment requirements outlined in USDA Permit P40-19-00249." The EANs ordered that the Cargo be exported within 7 days. Copies of the EANs are attached as Exhibit 3.

11.      The EANs were <u>not</u> issued due to the presence of any harmful pests in the Lumber.

12.      APHIS issued Permit P40-19-00249 on April 25, 2019, to Boscus. The permit authorizes Boscus to import various types of heat treated and kiln dried lumber from Germany and Latvia. The permit conditions include a requirement for the lumber to be heat treated in accordance with "HT treatment T314-c, heat treat with moisture reduction at T314-c and moisture below 20 percent; or kiln dried (KD) treatment as prescribed in the Dry Kiln Operators Manual in accordance with 7 CFR 300.2, prior to arrival." A copy of the permit is attached as Exhibit 4.

13.      The USDA permit also specifies:

Heat treated or kiln dried lumber must be marked by permanent marking on each piece of lumber on the cover of bundles of lumber HT or KD respectively. Alternatively, the importer document accompanying the shipment must state that the logs or lumber has been heat treated or kiln dried with one of the listed treatments.

14.      When the Lumber was presented for entry into the United States, Boscus submitted a PPQ Form 505 (Plant and Plant Product Declaration Form) to CBP/APHIS. The form was signed by an authorized representative of the producer. This form described the Lumber as Spruce KD18 (kiln dried to less than 18% moisture content) and otherwise compliant with the Lacey Act requirements set for in 16 U.S.C. 3372(f). Each bundle and every piece of the Lumber was

3

stamped KD-HT as required by the USDA permit. A photo of the KD-HT mark on a piece of lumber and copies of the of PPQ Forms 505 are attached as Exhibit 5.

15.     Boscus also submitted a declaration from the producer of heat treatment and kiln drying. The declaration stated:

> "This is to state that the kiln dried part of above mentioned load of sawn softwood lumber has been dried in accordance with IPPC/ISPM 15:
> – Temperature in kilns: >60° C
> – Core temperature of the lumber: >56° C
> – HT/DB (heat treatment/debarked)
> – The lumber has been put on stickers every layer before kiln drying
> In treating the wood, a core temperature of 56° C was reached and maintained for at least 30 minutes."

Copies of the declarations are submitted as Exhibit 6.

16.     Boscus has submitted without previous difficulty identical or virtually identical documentation for all shipments of lumber it has imported into the United States for the past 20 years. Upon information and belief Boscus understands that other importers have used without incident identical or virtually identical documentation for their imports.

17.     Upon information and belief, CBP/APHIS understood this declaration to mean that the Lumber was only heated to a core temperature of 56° C and held at that temperature for only 30 minutes. Based on this understanding, CBP/APHIS concluded that the Lumber had not been heat treated as required in the import permit. After the issuance of the EANs, Boscus consulted with the Pacific Lumber Inspection Bureau ("PLIB"), a non-profit, independent lumber and wood products inspection and certification agency, to determine whether the lumber produced by Ilim met the APHIS requirements. PLIB conducts routine inspections and certifications of Ilim's operations in Landsberg am Lech, Germany. PLIB has licensed Ilim to grade-stamp products

produced in its mill with a mark indicating that the lumber has been kiln dried to less than 18% moisture content. A copy of the license is attached as Exhibit 7.

18.    Boscus and PLIB provided documentation to CBP/APHIS regarding the heat treatment process used by Ilim. Some of this documentation discussed the ISPM 15 standard used to treat solid wood packaging material, such as pallets, to ensure that harmful pests are not present when the products are used for the international shipment of goods. A copy of this documentation is attached as Exhibit 8.

19.    Upon information and belief, Boscus eventually realized that CBP/APHIS understood that the lumber had only been treated in accordance with the ISPM 15 standard. Boscus then provided CBP/APHIS with examples of the kiln reports maintained by Ilim for each batch of rough sawn wood processed in the kilns. These reports establish that Ilim's kiln operations produce lumber that is kiln dried in accordance with and as prescribed in the Dry Kiln Operators Manual and is thus compliant with Permit P40-19-00249. A copy of this documentation as presented to CBP/APHIS is attached as Exhibit 9.

20.    After initially accepting this documentation, CBP/APHIS subsequently rejected it because it "did not provide a chain of custody linking the treatment charges to the wood bundles [CBP has] on hold." *See* email correspondence from John Tyrone Jones USDA; APHIS; PPQ; PIM attached as Exhibit 10.

21.    On December 21, 2021, Boscus submitted documentation providing the kiln reports for the Lumber. This documentation and the covering email is attached as Exhibit 11.

22.    Nevertheless, CBP/APHIS refused to rescind the EANs and allow the entry of the lumber into the United States and continues to require Boscus to export the lumber. The email correspondence regarding this final rejection is attached as Exhibit 12.

23.     The injury faced by Boscus is substantial. Boscus will incur damages in excess of $250,000 if it is required to export the Lumber. In addition to monetary damages, Boscus faces loss of, and damage to, its goodwill, reputation, and the rippling negative effects on its American business. Furthermore, exportation of the Lumber will damage Boscus' customers who are relying upon receipt of the lumber to supply the U.S. housing industry.

### Request for Declaratory Relief

24.     Boscus realleges the allegations in Paragraphs 1-23 as if set forth herein.

25.     Boscus requests the Court to declare rights, status, and legal relations between the parties with regard to the EANs. Such a declaration will resolve the pending controversy and is appropriate in this instance.

26.     Boscus thus seeks a declaratory judgment that: (a) the relevant EANs are invalid and are rescinded and vacated and (b) Boscus may enter the lumber into the United States.

### APPLICATION FOR TEMPORARY RESTRAINING ORDER AND TEMPORARY AND PERMANENT INJUNCTION

27.     Boscus realleges the allegations in Paragraphs 1-26 as if set forth herein.

28.     As previously discussed, CBP/APHIS has ordered the immediate exportation of the lumber.

29.     If Defendant is allowed to continue its requirement for exportation of the lumber, Plaintiff will suffer substantial and irreparable damages. Boscus now files this Application for a Temporary Restraining Order.

30.     Boscus requests this Court issue a Temporary Restraining Order preventing Defendant from exporting or ordering the exportation of the lumber. Further, Boscus respectfully requests this Court issue a Temporary Restraining Order to prevent Defendant from ordering any steam ship line, vessel personnel, stevedores, and logistical staff to load and/or export and/or

6

destroy the lumber. Boscus respectfully requests this Court grant this Temporary Restraining Order in order to protect Plaintiff and its customers, until such time as an evidentiary hearing may be heard by the Court.

31.     Defendant's continued actions have constituted an unappealable exportation. If allowed to continue its exportation, Defendant's actions will seriously harm Boscus' business, its goodwill, reputation, and customer base. This harm is imminent.

32.     The injury faced by Boscus is substantial and irreparable. The burden of temporarily ceasing the imminent exportation is outweighed by the benefit of protecting Boscus and its customers' interests. There is no adequate remedy at law. There is a substantial likelihood of success on the merits of this case, as Boscus has demonstrated that the actions of CBP/APHIS are arbitrary, capricious and not in accordance with law.

33.     Granting the relief requested would not adversely affect public policy or public interest because the lumber does not contain harmful pests that could possibly damage U.S. public policy or public interest. Moreover, the exportation of the lumber would harm the public interest of the U.S. homebuilding industry at a time when lumber is in short supply.

34.     While Boscus believes that no bond is necessary, upon a finding by this Court that a bond is necessary, Boscus will post bond. In the case the Court finds a bond should be posted, Boscus believes the bond should be set at a nominal amount given that the lumber presents no possible harm.

35.     Boscus further requests this Court to set its Application for a Temporary Injunction for a hearing. After said hearing, Boscus requests this Court to issue an injunction against Defendant precluding it from exporting or ordering the exportation of the lumber. Further, Boscus respectfully requests this Court issue an injunction to prevent Defendant from ordering any steam

ship line, vessel personnel, stevedores, and logistical staff to load and/or export, and/or destroy the lumber.

36.   Boscus further requests that this Court set its Application for a Permanent Injunction for a full evidentiary trial on the merits. After said hearing, Boscus requests the Court issue a Permanent Injunction against Defendant, precluding it from exporting, ordering the exportation or ordering the destruction of the lumber. Further, Boscus respectfully requests this Court issue a Permanent Injunction against Defendant, precluding it from ordering any steam ship line, vessel personnel, stevedores, and logistical staff to load and/or export, and/or destroy the lumber.

37.   At a trial on the merits, Plaintiff will prove that the EANs should be rescinded. Once these elements are proved, Boscus requests this Court to enter an Order on Permanent Injunction.

### ATTORNEY'S FEES

38.   Boscus realleges the allegations in Paragraphs 1-37 as if set forth herein.

39.   The recovery of attorneys' fees for declaratory relief is authorized by Texas Civil Practice and Remedies Code §§ 37.009, *et seq.*, and pursuant to relevant federal statute.

40.   As a result of Defendant's unlawful actions, Boscus has been required to obtain legal counsel to bring this suit and is therefore entitled to reasonable and necessary attorneys' fees that may be awarded by this Court.

### PRAYER

**WHEREFORE**, Boscus prays for judgment against Defendant as follows:

A.      Boscus requests this Court to enter an Order granting a temporary restraining order, and preliminary and permanent injunctive relief to stop the exportation of the lumber;

B.      A Court decree rescinding the EANs and ordering CBP to release the Lumber for entry into the United States;

C.      An award of costs in this suit;

D.      An award of reasonable and necessary attorneys' fees and expenses incurred in connection with this action; and

E.      All such other and further relief, either at law or in equity, to which Boscus may show itself to be justly entitled.

Respectfully submitted,

**CLARK HILL PLC**

*/s/ Katherine T. Garber*
**KATHERINE T. GARBER**
State Bar No. 07626985
SDTX No. 10584
909 Fannin**,** Suite 2300
Houston, Texas 77010
(713) 951-5600 – Telephone
(713) 951-5660 – Facsimile
kgarber@clarkhill.com

**Attorney-in-Charge for Plaintiff**